IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | |
|---|---|
| Wade Stepheny, Jr., ) | |
| ) | C/A No.: 8:06-02157-MBS |
| Plaintiff, ) | |
| ) | |
| vs. ) | **O R D E R** |
| ) | |
| Alvin S. Glenn Detention Center, Medical ) | |
| Services and Staff; Columbus County ) | |
| Sheriff Department, Medical Services and ) | |
| Staff; NFN Anderson, Sergeant at Alvin S. ) | |
| Glenn Detention Center; and NFN Pittman, ) | |
| Sergeant at Columbus County Detention ) | |
| Center, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff Wade Stepheny, Jr. is a pretrial detainee in the custody of the South Carolina Department of Corrections. He is currently housed at the Alvin S. Glenn Detention Center ("ASGDC") in Columbia, South Carolina. Appearing pro se, Plaintiff filed this action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his constitutional rights by subjecting him to medical indifference. Complaint, 2-5 (Entry 1).

This matter is before the court on the following dispositive motions: ASGDC's Motion to Dismiss (Entry 10); Columbus County Sheriff's Department ("CCSD") and Pittman's Motion to Dismiss for Lack of Personal Jurisdiction (Entry 14); and Anderson's Motion for Summary Judgment (Entry 42). By orders filed pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), on September 6, 2006, September 12, 2006, and November 11, 2006, Plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to respond adequately. On September 12, 2006, Plaintiff filed Response in Opposition to ASGDC's Motion

to Dismiss (Entry 20); on September 18, 2006, Response in Opposition to Defendants CCSD and Pittman's Motion (Entry 23); and on November 28, 2006, Response in Opposition to Defendant Anderson's Motion (Entry 46). On January 4, 2007, Plaintiff also filed Motion for Summary Judgment (Entry 51).

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Bruce Howe Hendricks for pretrial handling. On December 12, 2006, the Magistrate Judge filed a Report and Recommendation in which she recommended that the court grant ASGDC's motion to dismiss, CCSD and Pittman's motion to dismiss, and Anderson's motion for summary judgment. Report and Recommendation, 10 (Entry 47). The Magistrate Judge also recommended that Plaintiff's claims be dismissed with prejudice and that Plaintiff's Motion to Produce (Entry 33) and Motion for Preliminary Injunction (Entry 7) be denied as moot. Id. Plaintiff filed objections to the Report on January 4, 2007. Objection to Report and Recommendation (Entry 48).

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of any portions of the Report and Recommendation to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

**FACTS**

On March 15, 2005, CCSD law enforcement officers arrested Plaintiff in Columbus County, North Carolina for automobile theft. Plaintiff alleges that, on May 2, 2005 while he was housed at Columbus County Detention Center ("CCDC"), another CCDC inmate brutally attacked Plaintiff, leaving him with injuries to the head and neck; loss of sight, smell and taste; and severe migraine headaches. Complaint, 3. After this incident, Plaintiff was prescribed carisoprodol and naproxen by the medical personnel at CCDC. Plaintiff's Memorandum in Support of Motion for Summary Judgment, 1 (Entry 51-2).

On May 25, 2005, Plaintiff was extradited to South Carolina by Deputy Hayhurst of the Richland County Sheriff Department ("RCSD") and taken directly to ASGDC. Id. Defendant Anderson inventoried Plaintiff's belongings upon his arrival. Id. at 2. The inventory record indicates that Plaintiff's belongings included various miscellaneous and personal items. Inmate and Medical Records Part I, 13 (Entry 42-4). According to an ASGDC memorandum dated August 12, 2005, Plaintiff also possessed four bottles of prescription medication at the time he was processed into the facility, including two blood pressure medications (HCTZ and atenolol) and two anti-inflammatory medications (carisoprodol and naproxen). Id. at 27. The medication was processed by the medical staff on May 26, 2005 for distribution to Plaintiff. Id. Members of the medical staff unsuccessfully attempted to give Plaintiff doses of his medication twice during the following two days. Id. On May 27, Plaintiff did not respond when the person distributing the medication called his name, and, on May 28, Plaintiff refused to take the medication. Id. Whether Plaintiff received his medication on May 30 and 31, 2005 is unclear; however, Plaintiff's medical administration record shows that he was "out of meds" on June 10, 2005. Id. On June 12, a doctor wrote Plaintiff

a prescription for HCTZ, Atenolol, and Ibuprofen.[1] Id.

Since the date of his arrival at ASGDC, Plaintiff has filed various grievances and requests for the return of the carisoprodol and naproxen medications. See Inmate and Medical Records Part I, 30, 32 (statement dated May 26, 2005 that Plaintiff "request[s] and needs my medication" for head and neck injuries); id. at 31 (grievance dated June 5, 2005 concerning Plaintiff's "missing" "personal property and medications")[2]; id. at 23 (grievance dated November 9, 2005 stating that Plaintiff "has been without prescription medications for head and neck injuries and migraines . . . since 5-25-05"); Inmate and Medical Records Part II, 38 (request dated October 26, 2005 for "prescriptions for neck and migraine headache"); id. at 36 (statement dated November 28, 2005 that Plaintiff was "missing [the] head and neck injury prescription medications"); id. at 18 (request dated July 13, 2006 for "pain medications for head and neck injuries"); id. at 17 (request dated September 1, 2006 for "medications for head and neck injuries that was [sic] sent during extradition from N.C."). In addition to Plaintiff's grievances and requests for medication, he has also requested to be seen by a doctor for his head and neck injuries. See id. at 34-35, 37.

On July 28, 2006, Plaintiff filed a complaint against ASGDC Medical Services and Staff; Markilo Anderson, a sergeant at ASGDC; CCSD Medical Services and Staff; and Helen Pittman, a sergeant at CCSD. Complaint, 1-2. Plaintiff argued that the medical staffs at ASGDC and CCSD

---

[1] It appears that the medical staff at ASGDC substituted ibuprofen for carisoprodol and naproxen in this and subsequent prescriptions. See Inmate and Medical Records Part II, 5-15, 19-21, 32-33 (Entry 42-5); Inmate and Medical Records Part III, 1-10, 17-19, 25-27, 30-32, 33, 37-39 (Entry 42-6).

[2] In response to one of Plaintiff's grievances regarding his "missing" medications, Captain William Bowman, Jr. wrote that Plaintiff's "claim of missing property and records from [his] previous institution needs to be addressed to the reporting agency; ASCDC only accounts for property in its possession." Id. at 18.

4

had treated him with deliberate indifference by depriving him of medications necessary to treat the head and neck injuries he allegedly sustained while he was in the custody of CCDC. Id. at 3. He also requested a preliminary injunction to stop the medical staffs from improperly diagnosing and treating his head and neck injuries. Id. at 5. On August 22, 2006, Plaintiff filed a separate motion for a preliminary injunction, which repeated the same grounds as set forth in his complaint and added a request to "stop 42 USC 1983:3549(A) from U.S. Postal Mail Tampering and Conspiracy to U.S. Postal Mail Tamper." Motion for Preliminary Injunction, 1-2 (Entry 7).

## DISCUSSION

The court has reviewed Plaintiff's objections to the Report and Recommendation. All the objections raised by Plaintiff are general objections to which this court need not respond. See Orpiano v. Johnson, 687 F.2d 44, 47-48 (4th Cir. 1982) (when a party fails to file specific objections to the Magistrate Judge's proposed findings and recommendations, the court need not conduct a de novo review). Plaintiff's objections do not direct the court's attention to a specific error in the Magistrate Judge's Report and Recommendation; rather, Plaintiff's filing merely summarizes the allegations in his complaint. Nonetheless, the court keeps in mind that Plaintiff is a pro se litigant and is entitled to some deference. See Cruz v. Beto, 405 U.S. 319 (1972) (stating that courts are charged with liberally construing complaints filed by pro se litigants to allow the development of a potentially meritorious case). Therefore, the court has conducted a de novo review of the Report and Recommendation.

### I. MOTIONS TO DISMISS

The court may grant a motion to dismiss only if it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief. Hishon v. King &

Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and must view the complaint in a light most favorable to the plaintiff. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). When a complaint is filed pro se, the court should construe the complaint even more liberally, and examine carefully the plaintiff's factual allegations, no matter how unartfully pleaded, to see whether they could provide a basis for relief. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). The requirement of liberal construction, however, does not turn the court into an advocate for Plaintiff or require it to address claims which are not squarely before it. See Weller v. Dep't of Social Servs., 901 F.2d 387, 391 (4th Cir. 1990).

A.      ASGDC's Motion to Dismiss

In its motion to dismiss, ASGDC argues that Plaintiff failed to state a cause of action against ASGDC because it is a structure not amenable to suit pursuant to 42 U.S.C. § 1983. ASGDC's Motion to Dismiss, 1. The Magistrate Judge agreed, finding that the detention center could not be sued in a § 1983 action because it is not a natural "person." Report, 7-8. It is well settled that a § 1983 claim requires the plaintiff to allege injury from a constitutional violation by a person acting under color of state law and that inanimate objects are not "persons" within the meaning of § 1983. See Allison v. Cal. Adult Auth., 419 F.2d 822, 833 (9th Cir. 1969) (holding that California Adult Authority and San Quentin Prison are not "person[s]" subject to suit under § 1983).

However, it is apparent after a review of the complaint that Plaintiff brought his complaint against ASGDC Medical Services and Staff.[3]  The caption names ASGDC "Medical Services

---

[3]     The only place in the complaint where ASGDC is referenced alone is in Plaintiff's explanation of the parties, which lists "ASGDC" as a defendant. Id. at 2.

(CCS)(and)(Staffs)" as a defendant.[4] Complaint, 1. In the body of the complaint, Plaintiff states that he is "alleging an Eighth Amendment claim for deliberate indifference to his serious medical conditions against the ASGDC Medical Services (CCS) and Staff(s) . . . ," id. at 3, and that he requests a preliminary injunction to "stop ASGDC Medical Services (CCS)" from providing inadequate medical care to him, id. at 5. It is clear from the face of the complaint that Plaintiff sued employees in the ASGDC medical department. Because those employees are "persons" under § 1983, they are amenable to suit in their individual capacities. Although Plaintiff's allegations are rather vague and general, his failure to name specific defendants is not fatal to his suit. Such plaintiffs are typically given an opportunity to particularize and amend. See Coleman v. Peyton, 340 F.2d 603, 604 (4th Cir. 1965) (explaining that when a pro se complaint contains a potentially cognizable claim, the plaintiff should be allowed to particularize the claim).

Construing the complaint as asserting allegations against ASGDC staff, the court declines to adopt the section of the Report and Recommendation regarding ASGDC's motion to dismiss. Plaintiff may amend his complaint within twenty (20) days of the entry of this order to particularize his claims against the ASGDC Medical Services and Staff; otherwise, the complaint against ASGDC Medical Services and Staff will be subject to dismissal pursuant to Fed. R. Civ. P. 41(b).[5]

---

[4] The caption of the complaint names ASGDC "Medical Services (CCS)(and)(Staffs)." Complaint, 1. It appears that the initials "CCS" are an abbreviation for Correct Care Solutions, Inc., one of the companies that provides medical services at ASGDC. See Inmate and Medical Records Part II, 5-14.

[5] Fed. R. Civ. P. 41(b) provides in part that: "For failure of the plaintiff to prosecute or to comply with these rules or any order of the court, a defendant may move for dismissal of an action or of any claim against the defendant." The court may also invoke this sanction sua sponte without motion from a defendant. See Ballard v. Carlson, 882 F.2d 93, 95-96 (4th Cir. 1989).

B.      CCSD and Pittman's Motion to Dismiss

CCSD and Pittman move for dismissal on the basis that this court does not have personal jurisdiction over them. Motion to Dismiss for Lack of Personal Jurisdiction, 2-7. The Magistrate Judge recommended that the court grant the motion to dismiss because CCSD and Pittman lack sufficient contacts with the state of South Carolina for the court to exercise either general or specific jurisdiction over them. Report, 5-7.

Plaintiff bears the burden of proving that the defendants are subject to personal jurisdiction in the state of South Carolina. New Wellington Fin. v. Flagship Resort Dev., 416 F.3d 290, 294 (4th Cir. 2005) ("When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff ultimately bears the burden of proving to the district court judge the existence of jurisdiction over the defendant by a preponderance of the evidence."). Where, as here, the district court decides a pretrial personal jurisdiction motion without an evidentiary hearing, the plaintiff need only establish a prima facie basis for personal jurisdiction to survive the jurisdictional challenge. Id. In considering a personal jurisdiction challenge, the court must view all pleadings, affidavits, and other supporting documents in the light most favorable to Plaintiff. Id.

There are two types of personal jurisdiction: specific and general. Specific jurisdiction exists when the nonresident defendant's contacts with the forum state provide the basis for the suit; general jurisdiction exists when the defendant's contacts with the state are not the basis for the suit, but jurisdiction arises from the defendant's "general, more persistent, but unrelated contacts with the state." Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 397 (4th Cir. 2003).

      1.      <u>Specific Jurisdiction</u>

The court must conduct a two-step analysis to determine whether specific jurisdiction exists over a defendant. <u>Fallon Luminous Prod. Corp. v. Multi Media Elec., Inc.</u>, 343 F. Supp. 2d 502, 504 (D.S.C. 2004). First, the court must determine whether the forum state's long-arm statute provides a basis for asserting jurisdiction. <u>Id.</u> S.C. Code Ann. § 36-2-803 confers specific jurisdiction over nonresident defendants in certain instances, including transacting business and committing a tortious act in the state. This minimum contacts requirement may be satisfied by showing some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its law. <u>Burger King v. Rudzewicz</u>, 471 U.S. 462, 474 (1985). Second, the court must determine if the assertion of such jurisdiction comports with due process, so as to not offend the notions of fair play and substantial justice. <u>Fallon Luminous Prod. Corp.</u>, 343 F. Supp. 2d at 504; <u>Burger King</u>, 471 U.S. at 476. In evaluating this prong, the court must consider the burden on the defendant, the forum state's interest in adjudicating this action, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest among the states in furthering fundamental substantive social policies. <u>Id.</u> at 477.

Plaintiff has not established that CCSD and Pittman have had sufficient contacts with South Carolina to subject them to personal jurisdiction in this state. Neither CCSD nor Pittman has taken advantage of any privilege to conduct activities in South Carolina. It is undisputed that CCSD law enforcement officers arrested Plaintiff in North Carolina and held him there until a May 25, 2005 extradition hearing, after which RCSD law enforcement officers transported Plaintiff to South Carolina. Motion to Dismiss for Lack of Personal Jurisdiction, 4. CCSD operates exclusively in

Columbus County, North Carolina, and Pittman resided, worked, and was domiciled in North Carolina while employed with CCSD. Id. As such, the court is of the view that it would offend notions of fundamental fairness if CCSD and Pittman were subject to personal jurisdiction in South Carolina based on their brief interaction with Plaintiff in North Carolina.

2.     General Jurisdiction

To establish general jurisdiction over a nonresident defendant, the court must determine if the defendant's activities have been "continuous and systematic." ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002), cert. denied, 537 U.S. 1105 (2003) (quoting Helicopteros Nacionales de Colom., S.A. v. Hall, 466 U.S. 408, 416 (1984)). Due process requires a showing that the defendant is "domiciled in, organized under the laws of, doing business, or maintaining . . . its principal place of business in this State" or has an otherwise "enduring relationship" with the state. S.C. Code Ann. § 36-2-802.

Plaintiff has not alleged any conduct of CCSD or Pittman that took place in South Carolina. By Plaintiff's own admission, his arrest took place in North Carolina and the alleged attack by another CCDC inmate took place in North Carolina. Complaint, 3; Plaintiff's Motion for Summary Judgment, 1. As discussed supra, CCSD operates entirely in Columbus County, North Carolina, and Pittman resided exclusively in North Carolina while employed with CCSD. Motion to Dismiss for Lack of Personal Jurisdiction, 4. None of the facts in the present case supports this court's exercise of either specific or general jurisdiction over Defendants CCSD and Pittman.

Accordingly, the court adopts the section of the Report and Recommendation regarding Defendants CCSD and Pittman's motion to dismiss for lack of personal jurisdiction. Defendants

CCSD and Pittman's motion to dismiss is granted.[6]

## II. MOTIONS FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered when a moving party has shown "[that] the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). Summary judgment should be granted in those cases where it is perfectly clear that there remains no genuine dispute as to material fact and inquiry into the facts is unnecessary to clarify the application of the law. McKinney v. Bd. of Trs. of Mayland Cmty. Coll., 955 F.2d 924, 928 (4th Cir. 1992). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

To prevail on a motion for summary judgment, a party must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) it is entitled to judgment as a matter of law. See id., 477 U.S. at 248. Mere speculation cannot stave off a properly supported motion for summary judgment. See Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). A party may not rest on his pleadings, but must demonstrate that specific, material facts exist that give rise to a genuine issue.

---

[6]   In accordance with this ruling, Plaintiff's motion to produce "all medical records" pertaining to the assault "occurring 5/2/05 in the CCDC" is hereby denied for lack of jurisdiction. Motion to Produce, 1.

See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). As the Anderson Court explained, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. While the court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz, 405 U.S. 319, the court may not ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists, see Weller, 901 F.2d 387.

A.   Anderson's Motion for Summary Judgment

Anderson moves for summary judgment on the grounds that: (1) he did not treat Plaintiff with deliberate indifference and was not personally involved in the provision of Plaintiff's medical care; (2) he was entitled to qualified immunity; (3) Plaintiff had not suffered any injury sufficient to state a constitutional deprivation; and (4) Plaintiff had not fully exhausted his administrative remedies. Anderson's Memorandum in Support of Motion for Summary Judgment, 2-11 (Entry 42-2). The Magistrate Judge recommended that the court grant the motion because Plaintiff failed to allege any facts that would support a claim of medical indifference against Anderson. Report, 9.

Deliberate indifference to the serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 102-03 (1976). This is true whether the indifference is manifested by prison doctors in response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Id. at 104-05. Deliberate indifference exists when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, Plaintiff must show: (1) a serious injury; and (2) deliberate indifference on the part of Defendants.

A "serious medical need" is one that is "sufficiently serious" to require treatment, Brice v. Va. Beach Corr. Ctr., 58 F.3d 101, 104 (4th Cir. 1995), or "one that poses a substantial risk to health and safety," Young, 238 F.3d at 576. Plaintiff claims that his head and neck injuries are "severe," Complaint, 3; however, he has provided no objective evidence of the alleged severity. Assuming, without deciding, that Plaintiff has alleged a serious medical need, Plaintiff has failed to show that Anderson exhibited "deliberate indifference" to his needs. Deliberate indifference is a high standard and requires a showing of treatment that is "so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). "[I]n order for an individual to be liable under § 1983, it must be 'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights,'" Wright v. Collins, 766 F.2d 841, 850 (4th Cir.1985) (quoting Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977)).

Plaintiff has not shown that Anderson was personally involved in the deprivation of his constitutional rights. Anderson's only interaction with Plaintiff occurred when Anderson conducted Plaintiff's intake process upon his arrival at ASGDC on May 25, 2005. Plaintiff's Memorandum in Support of Motion for Summary Judgment, 2. Plaintiff claims that Anderson "failed to adequatly [sic] inventory the plaintiff [sic] prescribed prescription medications, " id., and that Anderson "deprived the plaintiff [sic] diagnosised [sic] . . . medications," Plaintiff's Motion for Summary Judgment, 3. Anderson is an employee in the intake section at ASGDC. Affidavit of Anderson, 1

(Entry 42-3). In this capacity, he does not participate in the provision of any medical care at the detention center. Id. at 1-3. When a medical need arises during the booking process (e.g., an inmate complains of an injury), "it is ASGDC's policy to require the arresting or transporting officer or agency to transport the inmate to a medical service provider before he or she will be booked into the center." Id. at 2. Because Anderson was not involved in Plaintiff's medical care or treatment, he is not subject to suit for any alleged violation of Plaintiff's constitutional rights.

Furthermore, Plaintiff's assertion that Anderson did not adequately inventory his belongings is also belied by the record. Anderson's affidavit states that "[i]nmates who come into the facility with any drugs or medications have those medications taken to the health department for review and verification of the medical need." Id. at 2. The record indicates that this procedure was followed in Plaintiff's case. According to an ASGDC memorandum, the medications that Plaintiff possessed upon his arrival to ASGDC were processed "in Medical for distribution to detainee." Inmate and Medical Records Part I, 27. Thus, it appears that Anderson properly followed the ASGDC policy by forwarding Plaintiff's medications to the appropriate department. Although Plaintiff may have preferred for Anderson to process his belongings and medications in a different manner, the fact that he is dissatisfied with the facility procedure does not show medical indifference. See Smart v. Villar, 547 F.2d 112, 114 (10th Cir. 1976) (holding that a difference of opinion as to treatment or diagnosis between prisoner and medical staff of prison cannot by itself give rise to a constitutional violation).

Accordingly, the court adopts the section of the Report and Recommendation regarding Defendant Anderson's motion for summary judgment. Defendant Anderson's motion is granted.

B.	Plaintiff's Motion for Summary Judgment

Plaintiff's motion for summary judgment does not state any legal basis which would entitle him to summary judgment. Plaintiff's Motion for Summary Judgment, 1-4. Plaintiff merely rehashes the allegations of his complaint and states repeatedly that summary judgment "must be granted" as "a matter of law."[7] Id. These are merely conclusory statements made in response to each argument raised in Defendant Anderson's motion for summary judgment. See Anderson's Memorandum in Support of Motion for Summary Judgment, 1-11. In order to be entitled to summary judgment, Plaintiff must present sufficient evidence to show that judgment on the pleadings is appropriate, and that there are no genuine issues for trial. See Fed. R. Civ. P. 56. Plaintiff has presented no such evidence in this case, and he cannot obtain summary judgment relief based solely on the general and conclusory arguments he has presented in his motion. As such, Plaintiff's motion for summary judgment is denied.

---

[7] For instance, Plaintiff states that:(1) summary judgment "must be granted where the record demonstrates as a matter of law that Defendant Anderson has violated the plaintiff [sic] rights under the 4th, 5th, 6th, 7th, 8th, 14th amendment [sic] of the Constitutions [sic] by dening [sic] the plaintiff proper and adequate medical care and treatment," id. at 1-2; (2) summary judgment "must be granted where the record shows and demonstrates that [Plaintiff] has fully exhausted Plaintiff [sic] administrated [sic] remedies prior to the intiation of this action," id. at 2; (3) summary judgment against [Defendant Anderson] "must be granted as a matter of law where the record shows and demonstrates personal involvements [sic] on the part of the defendant in this provision of medical care and medical treatment," id.; (4) "the defendant [is] not entitled to non-qualified [sic] immunity" under § 1983, id.; (5) "there is evidence sufficient to a stated [sic] constitutional deprivation and thereof, [sic] plaintiff [sic] claims must be granted as a matter of law," id. at 3; (6) Plaintiff's "claims are not patently frivolous and this matter must not be deemed a strike to the Prison Litigation Reform Act," id.; (7) Defendant Anderson "conspired to commit conspiracy and obstruction of justice[] by depriving the plaintiff" of his prescription medications, id.; and (8) Plaintiff's "claims against [Defendant Anderson] must be granted as a matter of law where the law and records demonstrates [sic] that the defendant committed perjury," id. at 4.

15

**III.     PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff moves for a preliminary injunction to "stop the defendants from continuing to denying the plaintiff . . . prescription medications" and to "stop 42 USC 1983:3549(A) from U.S. Postal Mail Tampering and Conspiracy to U.S. Postal Mail Tamper." Motion for Preliminary Injunction, 1-2. The Magistrate Judge recommended that the court deny this motion as moot if the court granted ASGDC, CCSD, and Pittman's motions to dismiss and granted Anderson's motion for summary judgment. Report, 10. Because the court did not adopt the Report and Recommendation with respect to the ASGDC's motion to dismiss, the court must consider Plainitff's motion for a preliminary injunction separately.

In determining whether to grant injunctive relief prior to a trial on the merits, the court is required to consider and balance four factors:

(a) plaintiff's likelihood of success in the underlying dispute between the parties;
(b) whether plaintiff will suffer irreparable injury if the interim relief is denied;
(c) the injury to defendant if an injunction is issued; and
(d) the public interest.

N.C. State Ports Auth. v. Dart Containerline Co., Ltd., 592 F.2d 749 (4th Cir. 1979). See also Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189 (4th Cir. 1977); Fort Sumter Tours, Inc. v. Andrus, 564 F.2d 1119 (4th Cir. 1977). The two most important factors are probable irreparable injury to the plaintiff if the relief is not granted and the likelihood of harm to the defendant if the injunction is granted. State Ports Auth., 592 F.2d at 750.

A plaintiff does not have an automatic right to a preliminary injunction, and such relief should be used sparingly. The primary purpose of injunctive relief is to preserve the status quo pending a resolution on the merits. Injunctive relief that changes the status quo pending trial is

limited to cases where the "exigencies of the situation demand such relief." Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980). As the Fourth Circuit has noted:

> [I]t is well established that absent the most extraordinary circumstances, federal courts are not to immerse themselves in the management of state prisons or substitute their judgment for that of the trained penological authorities charged with the administration of such facilities. As the District of Columbia Circuit observed in Inmates of Occoquan v. Barry, 844 F.2d 828 (D.C. Cir. 1988), "in carrying out their remedial task, courts are not to be in the business of running prisons. The cases made it plain that questions of prison administration are to be left to the discretion of prison administrators." Id. at 841; see also Rhodes v. Chapman, 452 U.S. 337, 349, 101 S. Ct. 2392, 200, 69 L. Ed. 2d (1981) ('[C]onsiderations [of appropriate prison management] properly are weighed by the legislature and prison administration rather than a court."); Bell v. Wolfish, 441 U.S. 520, 562, 99 S. Ct. 1861, 1886, 60 L. Ed. 2d 447 (1979) (disapproving trend of courts becoming "increasingly enmeshed in the minutiae of prison operations"); Turner v. Safley, 482 U.S. 78, 84-85, 107 S. Ct. 2254, 2259-60, 96 L. Ed. 2d 64 (1987).

Taylor v. Freeman, 34 F.3d 266, 268 (4th Cir. 1994).

The temporary relief sought by Plaintiff would require the court to reverse, rather than preserve, the status quo, and to undermine, without a hearing on the merits, the ASGDC medical staff's decision not to prescribe carisoprodol and naproxen to Plaintiff. Although Plaintiff alleges harm in that he needs the medications for his head and neck injuries, the public interest would not be served by overriding the determination of ASGDC's medical staff. Accordingly, Plaintiff's motion for a preliminary injunction to stop ASGDC from denying him the prescription medications for carisoprodol and naproxen is denied.

Plaintiff's motion is also denied with respect to the request for a preliminary injunction to "stop 42 USC 1983:3549(A) from U.S. Postal Mail Tampering and Conspiracy to U.S. Postal Mail Tamper." Motion for Preliminary Injunction, 2. One of the most important factors for the court to balance is the probability of irreparable injury to the plaintiff if the relief is not granted. State Ports

Auth., 592 F.2d at 750. Plaintiff has not only neglected to identify which persons have allegedly tampered with his mail, but he has also failed to state what irreparable harm he will suffer if the injunction is not issued. Consequently, he has not met the standard for injunctive relief as set forth in State Ports Auth., 592 F.2d 749.

**IV. PLAINTIFF'S MOTION TO AMEND THE COMPLAINT**

Plaintiff moves this court for leave to amend his complaint to name Deputy Hayhurst as a defendant. Motion to Amend, 1 (Entry 50). Pursuant to Federal Rule of Civil Procedure 15(a), "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . . Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." In the present case, Defendant Anderson filed an answer to Plaintiff's complaint on September 5, 2006. Answer to Complaint (Entry 9). Such answer is a responsive pleading as set forth in Federal Rule of Civil Procedure 7(a); thus, Plaintiff may not amend his complaint as a matter of right.

The court finds that justice does not require Hayhurst's addition as a defendant to this action. Plaintiff states that Hayhurst's name was "erroneously deleted" from the complaint, Motion to Amend, 1; however, the complaint is handwritten, and there is no mention of Hayhurst anywhere in the document, Complaint, 1-5. Further, Plaintiff may not state a claim of deliberate indifference based on medical treatment against Hayhurst. Plaintiff has identified Hayhurst as the RCSD law enforcement officer that transported him from the CCDC to ASGDC and states that Hayhurst was "given specific instructions by [Pittman] prior to extraditing the plaintiff that the plaintiff was on prescribed . . . medications for severed [sic] head and neck injuries." Motion to Amend, 1-2. Assuming those allegations are true, Plaintiff is unable to prove that Hayhurst acted with deliberate

indifference because Hayhurst fulfilled his duty by successfully transporting Plaintiff and his medications to ASGDC. Inmate and Medical Records Part I, 27. Thus, the court finds that amending the complaint to add Hayhurst as a defendant would not serve the interests of justice. Plaintiff's motion to amend is denied.

## CONCLUSION

The court has accepted all of Plaintiff's factual allegations as true. After thoroughly reviewing the Report and Recommendation in its entirety and the evidence in this case and after examining the applicable case law, the court **denies** ASGDC's motion to dismiss (Entry 10) and declines to adopt the Magistrate Judge's recommendation that summary judgment be granted with respect to the merits of Plaintiff's claims. Nonetheless, the court adopts the remainder of the Report and Recommendation and **grants** CCSD and Pittman's motion to dismiss (Entry 14) and **grants** Anderson's motion for summary judgment (Entry 42). Additionally, the court **denies** Plaintiff's motion for summary judgment (Entry 51); **denies** Plaintiff's motion for preliminary injunction (Entry 7); **denies** Plaintiff's motion to amend the complaint (Entry 50); **denies** Plaintiff's motion to produce (Entry 33); and **denies** Plaintiff's motion for a hearing (Entry 49). Plaintiff may amend his complaint within twenty (20) days of the entry of this order to particularize his claims against ASGDC Medical Services and Staff; otherwise, the court will dismiss the complaint pursuant to Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**


    /s/ Margaret B. Seymour  
February 15, 2007                    Margaret B. Seymour  
Columbia, South Carolina      United States District Judge